UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :

                                                                SUMMATION

   - v. -          :

                                                                11 Cr. 32 (JSR)

JAMES FLEISHMAN,          :

        Defendant.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## GOVERNMENT SUMMATION

       The pending request to modify the defendant's term of supervised release so as to include a condition of mandatory alcohol treatment presents at least two distinct, if related, factual issues: first, whether the defendant's statements to Pretrial Services ("PTS") and to the U.S. Department of Probation ("Probation") regarding alcohol use are consistent or inconsistent with his current representations to the Bureau of Prisons ("BOP")—and thus, at least indirectly to this Court—regarding the same; and second, notwithstanding any potential inconsistencies, whether the defendant is presently in need of, and thus an appropriate candidate for, alcohol treatment while on supervised release.

       With respect to the first, the Government offered evidence that is corroborated and essentially undisputed—the defendant's statements to PTS and to Probation are fundamentally inconsistent with his present request for alcohol treatment. Indeed, the Government would submit that the evidence offered conclusively established that on at least three separate

occasions, the defendant was asked about his alcohol use and never indicated any problem with alcohol, let alone a need or desire for alcohol treatment.

With respect to the second, the Government has consistently maintained that the defendant carries the burden of establishing his eligibility for alcohol treatment, and, accordingly, for the modification of supervised release currently being sought. The defendant has offered no evidence at all in these proceedings and thus has not and cannot meet that burden. Moreover, in light of the evidence that is before the Court at this time, the Government believes the Court has a strong factual basis in the record for viewing with considerable skepticism the defendant's current claim of need for treatment.

As a result, the Government would encourage the Court to deny the pending request to modify the defendant's term of supervised release so as to include a condition of mandatory alcohol treatment as unsupported and thus unwarranted.[1]

## The Defendant's Statements to Pretrial and Probation are Fundamentally Inconsistent with his Current Request

With respect to the first factual issue, the Government offered evidence at the September 14 hearing that the defendant was interviewed on three separate occasions: by the Probation in

---

[1] At the September 14, 2012 hearing, the Court identified several additional actions it might consider taking, including (1) making a recommendation to the BOP that the defendant no longer be permitted to participate in the Residential Drug Abuse Program ("RDAP"); or (2) making a criminal referral to this Office or to the U.S. Attorney's Office for the District of Colorado. With respect to the first, the Government is unable to take a position at this time as to whether a recommendation to the BOP is appropriate, as the Government has been denied access to evidence it deems necessary to properly evaluate that issue—namely, the precise nature of statements made by the defendant to the BOP regarding his alcohol use and the medical records and other documents submitted in support of the request. With respect to the second, the Government as a matter of course takes no position on whether a criminal referral to this or another U.S. Attorney's Office is appropriate.

conjunction with preparation of a Presentence Report ("PSR"); by PTS in New York in conjunction with preparation of a PTS Report; and by PTS in California in conjunction with a separate PTS Report. The Government's evidence, which included the testimony of two witnesses, Probation Officer Katrina Minus-Shepard and Pretrial Services Officer Emily Rosado, along with twelve exhibits,[2] established that on each occasion, (1) the defendant was asked about his alcohol use, and (2) the defendant denied any problem with alcohol.

> 1. *Probation – New York*

The Court heard testimony that a PSR was prepared with respect to the defendant and that the defendant was interviewed in conjunction with that PSR. (Tr. 50:21-24.) Specifically, Probation Officer Minus-Shepard, who conducted that interview, testified that she had a specific memory of interviewing the defendant by telephone, (Tr. 49:3-4), that she had specifically asked the defendant about alcohol use, and that the defendant had indicated that he "did consume alcohol [but] . . . it wasn't excessive, he drinks socially," (Id. 49:12-14). The Government also offered Minus-Shepard's notes of that interview which indicated that, at the time of the interview, she wrote down with respect to the defendant, "[d]rinks alcohol socially." (Ex. 11.) Asked about these notes, Minus-Shepard testified that "[h]e used the word [socially] and I wrote the word down." (Tr. 49:17; 50:10-13.)

The Government also offered the PSR prepared by Minus-Shepard regarding the defendant. (Id. 52:3-8.) The PSR mirrored Minus-Shepard's memory of her interview with the

---

[2]   Exhibits 2-6, 8-11, and 15 were admitted, largely without objection, at the September 14, 2012 hearing. Exhibits 16-17 were admitted, without objection, at the Court's telephonic conference on September 20, 2012. Documents marked as Government Exhibits 1, 7, 12, 13, and 14 were never offered or admitted as evidence.

defendant.  Namely, the PSR reported that "Fleishman said that he drinks alcohol socially."  (Ex. 10 ¶ 60.)   The PSR further corroborated that testimony insofar as it contained no recommendation with respect to alcohol, and, in particular, no recommendation that the defendant receive alcohol treatment either while incarcerated or as a condition of his supervised release.  As Minus-Shepard testified, no such condition was recommended because "[h]e said that he drinks socially.  We did not recommend any type of treatment because we had no information to say otherwise."  (Tr. 51:10-12; Ex. 10, at 22-23.)

The PSR and addendum also contain no indication that the defendant, through counsel or otherwise, objected in any way to the Report's findings or recommendations with respect to alcohol.  (Ex. 10, at 19-20.)  Minus-Shepard similarly testified to having no knowledge of any objections by the defendant, or defense counsel—who was present for the interview of Fleishman—to any of its findings or recommendations in this regard.  (Tr. 49:5-7; 54:4-7.)

Minus-Shepard's testimony on this point was both specific and corroborated:  when interviewed by Probation, the defendant (1) was asked about his alcohol use; and (2) denied any problem with alcohol use, stating instead that he only drank "socially."

### 2. PTS – New York

The Court also heard testimony regarding PTS Reports that were prepared regarding the defendant in both the Southern District of New York and the Northern District of California, as well as interviews of the defendant conducted in conjunction with those Reports.  PTS Officer Emily Rosado, who conducted the interview in New York, testified to that interview, and, in particular, to her questions about alcohol use.  While Rosado had no independent memory of the defendant, she testified to her custom and practice of asking all defendants about substance and

alcohol use during the course of her interview, and to taking notes on a "worksheet" used by PTS as she did so. (Id. 67:20-68:13.)   Moreover, after reviewing her notes of her interview of the defendant, which were themselves admitted into evidence, Rosado was able to recall that she specifically asked the defendant about his alcohol use as a part of that interview and that the defendant indicated that he drank alcohol only "on a social basis." (Id. 69:6-8, 70:17; Ex. 5.)

Rosado further testified that, had the defendant indicated any problem with alcohol, her custom or practice would have been to ask a series of follow-up questions and to record the ensuing answers. (Tr. 70:25-71:22).   Here, she did not ask those questions, and her notes do not reflect any answers to those questions, because the defendant "stated he only consumed alcohol on a social basis." (Id. 71:18-22.)  Finally, with respect to the interview, Rosado testified to having asked the defendant about any history of alcohol treatment. According to Rosado's testimony, the defendant indicated no history of treatment. (Id. 71:23-72:2.)

Rosado also testified as to the PTS Report she prepared regarding the defendant. The Report, which was admitted into evidence, contains no mention of alcohol use and makes no recommendations with respect to alcohol or alcohol treatment. (Id. 74:3-9; Ex. 6).  According to Rosado's testimony, the Report contained no information regarding alcohol use and made no recommendations with respect to alcohol conditions "[b]ecause [the defendant] didn't relate anything other than social use." (Id. 72:21-25; 74:6-9; Ex.6).

Finally, Rosado testified that no condition with respect to alcohol use was imposed by Magistrate Judge Francis in the Southern District of New York, as none was requested by PTS, the Government, or defense counsel. (Tr. 74:10-13; Ex. 7.).

Much like that of Minus-Shepard Rosado's testimony on these issues was specific and corroborated by the contemporaneous documents prepared by PTS and admitted in evidence. That testimony provides strong evidence that the defendant (1) was asked about his alcohol use when interviewed by PTS in New York; and (2) denied any problem with alcohol use, stating instead that he only drank "socially" or "on a social basis."

### 3. *PTS – California*

Finally, the Court heard testimony and received exhibits regarding an interview of the defendant by PTS in the Northern District of California, where the defendant was initially interviewed before appearing in this district.  The Government submits that this evidence and testimony established a substantially similar set of facts to those from the two interviews in New York:

First, Rosado testified, based on her review of notes of the interview conducted in the Northern District of California, that the defendant did not appear to have furnished any information regarding an alcohol problem.  Specifically, Rosado testified that "there's nothing stated" regarding alcohol on the "worksheet" used by PTS when interviewing the defendant.  (Tr. 76:16; Ex. 2.)  Rosado further testified that there was information recorded on the worksheet regarding other substances, and, accordingly that she had good reason to believe that the worksheet had, in fact, been used when the defendant was interviewed.  (Tr. 76:17-77:4.).

Second, the parties offered a stipulation regarding the testimony that PTS Officer Joshua Libby would offer if called as a witness.  Libby, who conducted the interview of the defendant in the Northern District of California, would have testified that he had no specific memory of interviewing the defendant, but had a custom and practice of asking each defendant he

interviewed about alcohol use, and recording any answers provided in the PTS "worksheet" he used to conduct the interview.  He would have further testified that the "lack of any markings or other information on [the] worksheet [pertaining to Fleishman] leads me to conclude that the defendant did not indicate any problem with, history of abuse of, or treatment for alcohol in my interview with him."  (Ex. 16.)

Finally, the Government offered the PTS Report prepared in the Northern District of California.  The Report, which makes mention of other substance use reported to PTS, namely a limited history of marijuana use, makes no mention of alcohol and reports no indications the defendant might have a problem with alcohol.  (Ex. 3.)  The Report also makes no recommendations with respect to alcohol.

As the Court is aware, despite the lack of any recommendation from PTS, Magistrate Judge Bommer in the Northern District of California did impose, as a condition of the defendant's release, that the defendant not use "any alcohol."  (Ex. 4.)  It is not clear why that condition was imposed.   For present purposes, however, the Government submits that the key point is that there is <u>no</u> evidence to suggest the condition was imposed as the result of anything the defendant said or did regarding his alcohol use.  Indeed, based on a review of the materials that would have been available to Judge Bommer, including the PTS Report prepared in the Northern District of California, as well as the transcript of the proceeding before Judge Bommer, it is clear that the defendant never expressed any problem with alcohol to either PTS or Judge Bommer, nor any desire to have such a condition imposed.  (Exs. 3, 4, 15.)

To the contrary, the defendant, through counsel, successfully sought to have the condition removed just weeks after it was imposed.  (Exs. 9, 17.)  And the condition was removed on

consent because neither the Government, PTS, nor the Court had any reason to believe such a condition was appropriate based on the information provided by the defendant at that time.

In conclusion, the Government submits that the evidence with respect to this third interview is equally conclusive: the Libby stipulation, which was agreed to by the defendant, as well the testimony of Rosado and relevant exhibits all demonstrate that much as in New York, in the Northern District of California, the defendant (1) was asked about his alcohol use when interviewed, and (2) denied any problem with alcohol use.

*   *   *

The defendant participated in three separate interviews by three separate Government offices over the course of nearly one year. On all three occasions the defendant was asked about his alcohol use and given every opportunity to raise and discuss any concerns he had with his alcohol use. On each of those occasions he denied any problem with alcohol. On at least two of those occasions he specifically stated that his alcohol use was "social." Those statements are, without question, inconsistent with his current position that alcohol treatment—and a condition of supervised release mandating alcohol treatment—are appropriate.

None of this evidence is seriously disputed by the defendant. Indeed, as the Court came to learn at the hearing, defense counsel was present for virtually all of these interviews, and lodged no objections to the findings of PTS or Probation with respect to alcohol use. The Government submits, thus, that the record on this first issue is clear and essentially uncontroverted: the defendant's statements regarding alcohol use to PTS and to Probation are inconsistent with the position he has taken with the BOP and his current application to the Court.

### The Application to Modify the Defendant's Terms of Supervised Release

With respect to the second factual issue before the Court—whether the defendant is, in fact, in need of alcohol treatment—the Government submits that the defendant has not and cannot meet his burden because he offered no evidence to support his claim that alcohol treatment is appropriate.  The defendant has declined to testify in support of his request, and has offered no testimony from friends, family members, co-workers, or others who might support his current claimed need for alcohol treatment.  The defendant has also offered no medical records— and, indeed, has strenuously opposed their release—in support of the claimed need for treatment.  On these grounds alone, the Court could and should deny the pending request.

But leaving aside the lack of evidence in support of the request, the Government submits that the evidence that is before the Court itself provides strong grounds to question the defendant's current claim of need for treatment.  First, as noted at length above, the evidence before the Court conclusively established that the defendant's current request is fundamentally inconsistent with his repeated representations to both PTS and to Probation.  That the defendant denied any problem with alcohol repeatedly when asked before his period of incarceration began is itself strong reason to view with skepticism his claim, once in prison, to the contrary.  That is particularly true given the obvious benefits to the defendant associated with his newfound claim to be in need of alcohol treatment.

Indeed, while the defendant received no discernible advantage from downplaying his alcohol use to Probation, in particular—presumably his "alcoholism" would have been a mitigating factor cited by defense counsel at sentencing—he has every reason to overstate or exaggerate that use to the BOP now.  As the Court is well aware, admittance to the Residential

9

Drug Abuse Program ("RDAP") carries considerable advantages, namely the promise of early release from prison. To call his current statements to the BOP—statements which the Government has never been allowed to review—at least potentially self-serving is hardly a stretch.

Second, unlike the defendant's present claim, which, as noted, is supported by absolutely nothing in the record currently before the Court, the defendant's initial position—i.e., that he was a social drinker with no history of alcohol abuse—<u>is</u> corroborated by substantial evidence in the record.

For example, both Minus-Shepard and Rosado testified as to their efforts to corroborate the information provided by the defendant with respect to alcohol use. Specifically, Minus-Shepard testified that, in conjunction with her preparation of the PSR, she spoke with the defendant's wife. While Minus-Shepard had little specific memory of her interview with the defendant's wife, Minus-Shepard testified to her custom and practice of asking family members about alcohol use and to "always include[ing]" in the PSR any "affirmative answer" with respect to potential substance and alcohol abuse. (Tr. 53:2-12.) Here, no such affirmative answer was included, despite the fact that a significant amount of information from the defendant's wife regarding other matters—including the fact that the defendant's wife is a former nurse and thus presumably better equipped than many to detect evidence of alcohol abuse, (<u>Id.</u> 53:22-54:3)—was included in the PSR, (Ex. 10 ¶ 60; Tr. 53:10-16).

Rosado similarly testified as to her efforts to corroborate the information provided by the defendant regarding his alcohol use. Specifically, she testified that she interviewed the defendant's friend, Howard Chartock; that her custom or practice would have been to ask

Chartock about the defendant's alcohol use, and to include any relevant or responsive information; and that no such information was, in fact, included in her Report. (Tr. 73:5-74:16). Moreover, after reviewing the Report she prepared, Rosado testified that she was certain she had asked Chartock about substance and alcohol because she had marked that paragraph of her Report with a "c" for "corroborated." (Id. 73:17-74:2.)

Rosado also testified that her colleagues in the Northern District of California appeared to have taken similar steps. Reviewing the Report prepared in that district, Rosado noted that PTS had spoken with the defendant's mother, had clearly asked her about health issues—including rather sensitive mental health issues—and information provided by the mother regarding those subjects is included in the Report. There is no indication, however, that the defendant's mother raised any concern about alcohol use. (Ex. 3.)

In sum, three different individuals who knew the defendant well—his wife, his mother, and his good friend—were all asked specifically about the defendant's substance and alcohol use. None identified any concerns. None identified the defendant as in need of alcohol treatment. Those facts alone should give this Court considerable grounds to view with skepticism the defendant's current claims to the contrary.

More broadly, the information provided by the defendant—and the portrait the defendant carefully orchestrated for Probation and for this Court in conjunction with sentencing—is at best unsupportive of, and at its core inconsistent with, his current claim of serious alcoholism. The PSR itself is especially disconcerting in this regard: according to the Report, Probation spoke with both the defendant's wife and mother and, much like this Court, received 29 character letters through defense counsel regarding the defendant. None of those interviews or materials

suggested the presence of a serious alcohol problem, and, to the contrary, all portrayed the defendant as a responsible and caring family man who put family and friends first, who took care of his disabled mother and young children, and who thus deserved considerable leniency from this Court.

For example, the defendant's mother, who is apparently disabled, told Probation that her son assisted her with chores, including shopping. According to the PSR, she "described her son as an honest and good man, who follows the rules" and "is a caring family-oriented man who cared for his father before his death and for her." (Ex. 10 ¶¶ 45, 51.) The defendant's wife, with whom the defendant had two children under the age of five at the time, "described her husband as a kind, hardworking, and humorous person, and a caring family man" and was "shocked to learn that he was charged with any criminal conduct, as this is not in his character." (Id. ¶ 49.) The defendant's aunt and cousins also submitted letters describing the defendant as caring, responsible, and "needed by his family." (Id. ¶ 51.) Finally, innumerable friends submitted letters "describ[ing] [the defendant] as an honest person who would think of family and friends first." (Id. ¶ 52.) The defendant himself is reported to have told Probation that "he is handling the stress associated with this arrest and conviction well." (Id. ¶ 59.)

Because the defendant, through counsel, has contested the release of any records with respect to the defendant's current care or his statements to the BOP, the Government has no information about the defendant's claimed alcohol use—that is, about how much or how frequently the defendant now claims he once drank, or what impact he now claims alcohol had on his life. But at bare minimum, the information provided by these friends and family seems

collectively at odds with the portrait of a man whose alcohol use was heavy, frequent, and so out of control that in-patient alcohol treatment is necessary.

In sum, the Government submits that with respect to the second issue, the defendant has failed to establish a factual basis for modifying his term of supervised release so as to add a condition of mandatory alcohol treatment.

## Conclusion

In light of the above, the Government would encourage the Court to deny the request to modify the term of the defendant's supervised release as unsupported and thus unwarranted.

Dated:    New York, New York
          October 4, 2012

Respectfully submitted,

PREET BHARARA
United States Attorney
Southern District of New York

By: /s/ Edward B. Diskant
    Edward B. Diskant
    Assistant United States Attorney
    Southern District of New York
    (212) 637-2294

**CERTIFICATE OF SERVICE**

        I, Edward B. Diskant, Assistant United States Attorney for the Southern District of New York, hereby certify that on October 4, 2012, I caused a copy of the foregoing Government's Summation to be served by email upon the following:

Ethan A. Balogh, Esq.
Coleman & Balogh LLP
744 Montgomery Street, Fifth Floor
San Francisco, CA 94111
eab@colemanbalogh.com
*Attorney for James Fleishman*


Dated:       New York, New York
                October 4, 2012

                                      /s/ Edward B. Diskant
                                      Edward B. Diskant
                                      Assistant United States Attorney
                                      (212) 637-2294